LUKE JOHNSON, and his wife, ARAMANDA P. JOHNSON, MOSES MEEK, and his wife, MARGARET MEEK, plaintiffs in error, vs. MARGARET BROWN, JAMES CARMICHAEL, JAMES R. BROWN and others, defendants in error.

V. held in his possession, certain negroes, which he had sold and conveyed to the children of B., but he so held them, for those children; after thus holding them for some time, he delivered them to B., saying, take them, and hold them, in trust for your children. B. took them, without objection to holding them for his children.

*Held*, That B's possession thus acquired, was not adverse to his children's title, and, therefore, that the statute of limitations would not run in favor of it, against their title.

In Equity, in Henry Superior Court.

The case is stated in the opinion of the Court.

DOYAL & NOLAN; and PEEPLES, for plaintiffs in error.

GLENN ; and FLOYD, *contra.*

*By the Court.*—BENNING J. delivering the opinion.

The plaintiffs in error, sued the defendants in error, in equity, for an interest in certain negroes.

The defendants, among other things, relied on the statute of limitations in their defence.

It appeared, by the evidence of John Vandergriff, that in July, 1825, he bought the negroes for $,1000, from William Brown, the father of Mrs. Johnson and Mrs. Meek, and kept the negroes in his possession, until about the next January; that, a few days after this purchase, Brown proposed to Vandergriff, that, if he would convey the negroes to his, Brown's children, he, Brown, would give him back the $1,000 ; that Vandergriff accepted this proposition, and, in accordance with it, made a deed of the negroes to Brown's children ; and, that he was directed by Brown, to have the deed recorded; that he and Brown went to the Clerk to have the deed recorded ; that he handed the deed to John Hill, the

Clerk, to be recorded ; that Brown, soon afterwards, told him to wait, and took back the deed from the Clerk, before it was recorded, and kept it; that, afterwards, when Vandergriff delivered the negroes to Brown, he told Brown, to take them, and keep them in trust for his, Brown's, children.

A part of the charge of the Court to the jury, was as follows :

"If the negroes were delivered, then upon the delivery, they vested in the children of Brown, and vested in Aramanda Johnson, as one of those children, and, through her, in her husband, absolutely ; and the statute of limitations, ran against him, and barred him, if his suit was not commenced within four years from the time, his right of action accrued. If no trust was created when the instrument was executed, and it then conveyed an absolute title to the grantees, the grantor could not, afterwards, change the character of the title conveyed, and convert it into a trust."

"If the deed conveyed an absolute title without any trust, an absolute title vested in the children of Brown, and through Aramanda Johnson, in her husband, and they were barred by the statute of limitations, if their suit was not commenced within four years, after their right of action accrued."

Was this charge right?

Vandergriff kept possession of the negroes for some time after the date of the transaction in which, he made a deed for them, to Brown's children, received from Brown the $1,000, in consideration for the deed, and let Brown, take possession of the deed ; but he did not keep this possession for *himself* ; he kept it for *Brown's children*.   This is, plainly, inferable, from his statement to Brown, made when, at last, he delivered the negroes to Brown, which was " to take them, and keep them in trust, for his children."   Vandergriff, then, whilst thus holding the negroes, was *not* holding them, adversely, to these children ; and, if he was not, then, the statute of limitations, was not running during this time

Johnson and Meek vs. Brown and Carmichael.

in *his* favor, against the children. His possession was to be considered, as the childrens' possession.

Now, Brown merely succeeded to this possession of Vandergriff's; when receiving the negroes from Vandergriff, he was told by Vandergriff, " to take them, and keep them in trust for his children." There can be no doubt, that Brown must have understood by these words, that it was expected of him, that he should hold the negroes for his children; and ·as, he received them without objecting to so holding them, it is to be considered, that he received them, agreeing to so hold them. True, it may be, that there was no technical *trust* created; a trust by which, the legal title passed into Brown, and the equitable into his children; but, what is far short of this, will often be sufficient to prevent the statute of limitations from running. There is no trust between landlord and tenant, principal and agent; (frequently there is not;) and, yet, as long as the relation lasts, the statute does not run in favor of the tenant, against the landlord—in favor of the agent, against the principal. In such case, the possession of the tenant—the possession of the agent, is not adverse, but is, in law, but the possession of the landlord—but the possession of the principal. Wherever the possession of one person, is, in law, the possession of another, it is not a possession that can be made available under the statute of limitations. And such was Brown's possession. It was, in law, the possession of his children.

Whilst, then, this possession of Brown, remained thus the possession of his children, the statute did not begin to run in his favor, against them.

How long did it so remain? Until he conceived the purpose, to change it into a possession adverse to his children, and they acquired knowledge of this change of purpose.

We think, then, that the charge aforesaid, was erroneous; that the Court should, instead of giving that charge, have given a charge to this effect; that if, when Vandergriff delivered the negroes to Brown, he told Brown, to take them

and keep them, in trust for his children, and Brown received them without objecting to so hold them, the possession he acquired, was one that was not adverse to his children, and, was one that was not to become adverse to them, until he conceived a purpose that it should become adverse to them, and knowledge of such his change of purpose came to them, and that the statute of limitations does not commence to run in favor of a possession, against the title, until the possession becomes adverse to the title.

So, we think, that there ought to be a new trial.

Judgment reversed.